## STATE OF NEW HAMPSHIRE

**HILLSBOROUGH, SS**  **SUPERIOR COURT**
**NORTHERN DISTRICT**

MegAnn Owens

v.

City of Manchester, New Hampshire

216-2020-CV-787

Order on Defendant's Motion in Limine Concerning Medical Bills

Defendant moves to exclude evidence of the portion of Plaintiff's medical bills that was written off by her medical providers. For the reasons stated below, Defendant's motion is DENIED IN PART.

Facts

On November 30, 2019, Plaintiff was involved in a two vehicle accident in Manchester, New Hampshire. According to both parties, a garbage truck operated by an employee of the Defendant backed into Plaintiff's car. Plaintiff has brought suit against Defendant. Defendant seeks an order preventing Plaintiff from presenting to the jury medical expenses in excess of the medical expenses actually paid by Plaintiff's insurer. According to Defendant, Plaintiff underwent wrist surgery as a result of the accident. Defendant seeks an order barring Plaintiff from seeking damages for the amount billed by Plaintiff's medical providers rather than simply the amount paid by Plaintiff's medical insurer. Defendant asks this Court to rule that the measure of damages is the amount that was actually paid to the medical provider. It argues that the collateral source rule does not apply because no one actually paid the amount that was

1

written off by the medical provider.  Plaintiff objects.

## Analysis

"[T]he collateral source rule . . . provides that an award of damages may not be reduced by the amount of benefits a plaintiff receives from a collateral source."  *Cyr v. J.I. Case Co.*, 139 N.H. 193, 195 (1994).  Thus, for example, if an employee sues a third party for negligence, the third-party defendant cannot introduce evidence that the employee received workers' compensation benefits in order to reduce the employee's recovery for lost wages or injuries.  *See, e.g.*, *Bell v. Primeau*, 104 N.H. 227, 228 (1962).  Such evidence runs afoul of the collateral source rule because the defendant's purpose for introducing it is to mitigate the plaintiff's damages and, in the workers' compensation context, the workers' compensation carrier will have a lien against a settlement or judgment.  *See id*; *see also Reed v. Nat'l Council of Boy Scouts of America*, 706 F. Supp. 2d 180, 194 (D.N.H. 2010) (applying collateral source rule to reduce medical bills).

To understand the collateral source rule, it is helpful to look at some of the earlier decisions on this issue from the New Hampshire Supreme Court.  *See Clough v. Schwartz*, 94 N.H. 138, 141 (1946) (collateral source rule bars evidence of payment of medical bills by Firemen's Relief Association); *Bell*, 104 N.H. at 228 (collateral source rule bars evidence of payment by workers' compensation carrier).  In both *Clough* and *Bell*, the supreme court's focus was on bills that were actually paid by a third party.  As the supreme court noted in *Dumas v. State Farm Mut. Auto. Ins. Co.*, 111 N.H. 43, 46 (1971), "[u]nder the collateral source rule our court permits recovery of expenses incurred by a plaintiff which he will never have to pay because they are paid from another source."  Or as noted by the court in *Clough*, "[o]n principle it should make no

difference to the defendants whether the payment was made by virtue of friendship, philanthropy or contract with a third party. . . [it] is no concern to the wrongdoer whether the bills for medical services and expenses were paid by an indulgent uncle, a liberal employer or a relief association." 94 N.H. at 141.  The supreme court in these cases was focused on bills that were actually paid by a third party, not bills that were written off by a service provider.

Plaintiffs seeking to exclude evidence of write-offs by medical providers often cite to *Lefebvre v. Govt. Emp. Ins. Co.*, 110 N.H. 23, 26 (1969).  In *Lefebvre*, the plaintiff was seeking to recover medical payments under his automobile liability insurance policy.  *Id.* at 24.  Although the supreme court noted that under the collateral source rule the plaintiff would be entitled to recover the "reasonable value" of the medical service ($918.00), the court held that under federal statutory law the plaintiff could only recover the $31.50 in out-of-pocket medical expenses.  *Id.* at 25.  Accordingly, this Court finds that *Lefebvre* is neither binding on the issue of the collateral source rule, because its discussion of the collateral source rule was clearly dicta, nor persuasive because it does not address the issue of value.  The supreme court simply accepted without discussion the "determined reasonable value" of the medical services.  Moreover, the plaintiff in *Lefebvre*, who was in the military, only paid $31.50 on a $918.00 bill not because of a negotiated write-off with an insurance company but because that was the only amount he was eligible to receive under his military benefits.

Plaintiff as well as a number of local federal court decisions have cited *Moulton v. Groveton Papers Co.*, 114 N.H. 505, 509 (1974) in support of the proposition that the collateral source rule bars consideration of write-offs of medical bills but in *Moulton* the supreme court held that the collateral source rule *did not apply* to a town's receipt of

3

payments from the State for the cost of repairing highway damaged from the failure of a private dam. In other words, the court in *Moulton* held that the town was not entitled to the windfall that would result from excluding the State's payment from the damages calculation under the collateral source rule. 114 N.H. at 511. *Moulton* did not address any issue that is related in any way to write-offs by medical providers.

The issue of whether the collateral source rule bars consideration of the amount actually paid for medical services is apparently unresolved by the New Hampshire Supreme Court.[1] What is clear under New Hampshire law is that evidence concerning damages for medical expenses must be based on the value of the medical services. The local federal court has acknowledged this principle in its discussions of the collateral source rule. *See, e.g.*, *Reed v. National Council of Boy Scouts of America, Inc.*, 706 F. Supp. 2d 180, 194 (D.N.H. 2010); *Aumand v. Dartmouth Hitchcock Med. Ctr.*, 611 F. Supp.2d 78, 90-92 (D.N.H. 2009). "This is not to say . . . that New Hampshire's collateral source rule bars a defendant from questioning the face amounts of the medical bills as equivalent to the reasonable value of medical services, which, of course, is the proper measure of those damages under New Hampshire law." *Reed*, 706 F. Supp.2d at 194 (quotations omitted).

However, after acknowledging that the value of the medical services is the question before the jury and that a defendant can question whether the billed amount equates to value, the federal courts have nevertheless assumed that the amount written off has inherent probative value on the economic value of medical services. Referring to the defendant's argument that barring evidence of unpaid medical bills would not

---

[1] There are superior court cases going both ways. The Court has reviewed its own order in *Knights v. Kurizian*, 2014-CV-804 (September 21, 2016). Having reviewed case law since 2016, the trend described in that order may no longer be in favor of plaintiffs on this issue and, in any event, the Court now finds the case law supporting defendants' arguments more persuasive.

4

result in a windfall to defendants, the court in *Reed* stated "[t]his argument ignores the reality that, as just discussed, when a medical provider agrees to 'write-off' an amount it would otherwise charge, that confers just as much a benefit on the plaintiff as . . . as if the 'written off' amount has been paid by a third party." 706 F. Supp. at 194.  This analysis, however, itself ignores the possibility that the face value of medical bills that are almost always written off has at best a distant relationship with value.

A number of courts outside of New Hampshire have recognized this dynamic. *See, e.g.*, *Law v. Griffith*, 457 Mass. 349, 356 (2010); *Higgs v. Costa Crociere S.P.A. Co.*, 969 F.3d 1295, 1311-1318 (11th Cir. 2020); *Howell v. Hamilton Meats & Provisions, Inc.*, 257 P.3d 1130, 1140 (CA 2011); *but see*, *e.g.*, *Weston v. AKhappytime LLC*, 445 P.3d 1015, 1028 (AK 2019).[2]  In *Law*, the Massachusetts Supreme Judicial Court explained the problem with assuming that the face amounts of medical bills have a significant probative value as to the value of the medical services:

> With the increasing role played by public and private health insurers in the American health care delivery system, doctors, hospitals, and other medical care providers have developed charge structures that may have little or no relationship to the reasonable value of the medical services at issue, because the providers ultimately negotiate discounts from the listed charges and are reimbursed on the basis of the discounted rates. The only patients actually paying the stated charges are the uninsured, a small fraction of medical bill payors.

457 Mass at 356-57.  In Massachusetts, the legislature had amended the collateral source rule only as it applied medical malpractice cases but otherwise has left the rule unchanged from its enactment in 1958.  *Id.* at 359-60.  Noting that charges for medical services had "changed dramatically" since 1958, the court held that the question should

---

[2] There are numerous cases throughout the country finding that the collateral source rule either does or does not apply to amounts billed but not paid.  The above cases are cited for their persuasive merit.  The Court has not attempted to collect all cases on this issue.

5

go the jury and that the defendant should be able to elicit information from a medical provider as to both "stated charges and the range of payments that that provider accepts for the particular type or types of services the plaintiff received." *Id.* at 356.  In arriving at this middle ground, the court noted that amounts paid may also have a "tenuous relationship to the reasonable value of the provider's medical service. . . because the discount from charges that the provider accepts is likely a function of a variety of factors." *Id.* at 358.

In *Higgs*, the U.S. Court of Appeals for the 11th Circuit came to a similar conclusion.  969 F.3d at 1311-1318.  Quoting from the *Law* case, the 11th Circuit stated "[b]ecause of the way in which healthcare is paid for in the United States, we simply cannot say that the amount healthcare providers charge categorically reflects that reasonable value." *Id.* at 1311.  "Thus, categorically adopting the amount billed as the measure of recovery would routinely give plaintiffs unreasonably large damages awards, unjustifiable in law or fact." *Id.* at 1312.  Like the court in *Law*, the 11th Circuit stated that it could not conclude that the amount paid "is a better approximation of the reasonable value of a provider's medical services." *Id.*  The 11th Circuit also concluded that the best practice would be to leave the decision to the jury who would be informed of the amount billed, the amount paid, and any expert testimony on the subject of value.  *Id.* at 1313-14.

Finally, in *Howell*, in which the California Supreme Court ruled that plaintiffs are entitled to the amount paid by his or her insurer, the court distinguished negotiated reductions in medical bills from the sometimes gratuitous payments that fall under the collateral source rule.  257 P.3d at 1139-40.  "Medical providers that agree to accept discounted payments by managed care organization or other health insurers as full

payment for a patient's care do so not as a gift to the patient or the insurer, but for commercial reasons and as a result of negotiations." *Id.* The court in *Howell* also noted that in the case where a medical provider write-off a portion of the bill because the patient lacks resources, the adjustment is made after the provision of services, whereas when medical providers and insurers negotiate a price for a particular service, that negotiation takes place before the patient receives services. That is an important distinction when one recalls that the inquiry is what is the value of the service. An after-the-fact adjustment based on the financial resources of the patient does not impact the value whereas as a negotiated reduction in price prior to the provision of service may have significant probative value.

As noted in footnote 2, there are numerous decisions throughout the country on both sides of this issue. This Court sees two general problems with the courts in other jurisdictions that have held that Plaintiffs are entitled to the face amount of the medical bills. First, as noted above, these courts generally assume that this figure is persuasive evidence of the value of the medical service with little analysis. *See, e.g.*, *Reed*, 706 F. Supp. at 194. But a number of courts have persuasively concluded that the face amount of the bills may have little bearing on the value of the service provided. Moreover, in a variety of different contexts, the New Hampshire Supreme Court has always looked to arm's length transactions when trying to determine value. *See, e.g.*, *Randall v. Riel*, 123 N.H. 757, 760 (1983) (finding liquidated damages provision reasonable based on the amount of the arms-length sale of property); *Moore v. Knight Foundations, Inc.*, 122 N.H. 334, 335 (1982) (arm's length sale of property put into question whether party had been unjustly enriched). The reason for this reliance is obvious. Much like the adversarial system underlying the justice system in this country,

7

this case law reflects the belief that two independent entities engaged in good faith negotiations will arrive at a market value. Of course, the face amounts of medical bills that are never paid could not be further from arms-length transactions. No one with medical insurance is paying this amount and it seems unlikely that many people without medical insurance are paying an amount that is often significantly higher than the bill after write-offs. Thus it is difficult to make any assumptions about the relationship between the face amount of medical bills and the value of the associated medical services. This Court disagrees with the analysis in *Reed* and other federal court decisions because in allowing the jury to hear evidence of an un-negotiated, unpaid and possibly arbitrary medical bill but not the amount that the medical provider and the insurer negotiated, these courts are overlooking the guidance from the New Hampshire Supreme Court on how courts should approach the issue of determining value. The adjusted medical bills that are the product of a negotiation between parties of relatively equal strength – medical providers and insurers – are much closer to the arms' length transaction that New Hampshire law prioritizes in assessing value.

The second issue that this Court takes with these decisions is their contention that Defendants can effectively question the merit of equating the billed price with value without admitting the paid price. *See, e.g.*, *Doreen W. v. MWV Healthcare Assocs, Inc.*, 937 F.Supp.2d 194, 197 (D.N.H. 2013). "[N]othing prevents a defendant from questioning the face amount of medical bills as equivalent to the reasonable value of the plaintiff's medical expenses – so long as the defendant does not use the amounts actually paid, by the Plaintiff's insurers, to settle those bills." *Id.* This is the functional equivalent of telling a boxer that he has a fair chance even though his dominant hand is tied behind his back. If defendants cannot tell the jury that the billed amount is not what

8

is actually paid, attacking the billed amount as not being equivalent to value is a very difficult proposition.

That said, the Court cannot conclude that the amount paid will always be the best measure of value. As noted by the court in *Law*, the negotiated rate may be lower than actual value for reasons particular either to the medical provider or the insurer. Accordingly, like the Massachusetts Supreme Judicial Court and the 11th Circuit, this Court concludes that when the parties are in disagreement as to whether the face amount of the bills or the amount paid is a better gauge of value, the issue should be put to the jury. Although the Court has considered the possibility that this will complicate many trials, the Court expects that in many cases the parties will be able to reach agreement prior to trial and that it will be the exception rather than the rule that juries will be required to weigh competing expert opinions on value. If the difference between the amount billed and the amount paid is not large enough to warrant retention of experts, the parties should be able to negotiate a compromise between the two numbers. Moreover, the suggestion by other courts that defendants can challenge the amount billed as being unreasonable is better framed as an argument for putting both numbers before the jury and requiring the parties, if necessary, to support the numbers they are advancing. If a defendant is already putting on evidence of actual value, requiring plaintiff to do the same may not significantly extend the length of trials. More importantly, this approach levels the playing field.

On balance, and in recognition of other decisions reaching a different conclusion, the Court nevertheless concludes that the foregoing jury approach is the soundest. In the event the parties are forced to put the issue before the jury, it allows the jury to determine whether the amount billed has any relationship to the value of the medical

service and is thereby at least consistent with the emphasis in New Hampshire law on focusing on arms' length transactions when determining value.

Accordingly, Defendant's motion is DENIED except that Defendant may admit evidence of the amount of medical expenses actually paid.

SO ORDERED

May 16, 2023
Date

Judge David A. Anderson

Clerk's Notice of Decision
Document Sent to Parties
on 05/17/2023