UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Warren Picard

      v.                             Civil No. 20-cv-583-LM
                                        Opinion No. 2023 DNH 115 P

James Ciulla

## O R D E R

Plaintiff Warren Picard brings claims for Fourth Amendment excessive force and First Amendment retaliation against defendant James Ciulla through 42 U.S.C. § 1983.  In advance of the upcoming trial, Ciulla moves in limine to exclude any "evidence of medical bills beyond those actually paid by or on behalf of" the plaintiff, Warren Picard.  Doc. no. 42 at 1.  Ciulla's motion relates to certain medical bills, arising out of the injuries Picard alleges were caused by Ciulla, issued by Picard's medical providers.  The medical bills total approximately $8,117.43, and Picard seeks compensatory damages for those bills.  Ciulla argues that Picard, however, did not pay the bills and never had any responsibility to do so.  Rather, the treating medical providers accepted a partial payment from the state in satisfaction of the bills.  Thus, Ciulla argues that Picard should not be permitted to introduce the bills as relevant evidence of his compensatory damages.  Ciulla's motion in limine is denied for the following reasons.

## DISCUSSION

Ciulla argues that medical bills issued in this case are not probative of the "reasonable value" of medical services received by Picard because they are "fictional numbers bearing no relationship to the damages incurred" by Picard.  Doc. no. 42 at 6.  Ciulla contends that unless Picard offers evidence suggesting that the bills bear a relationship to the services used, they "should not be admitted into evidence but precluded as being more prejudicial than probative."  See Fed. R. Evid. 403.  Picard objects, arguing that the majority rule in New Hampshire is that medical bills are probative evidence of reasonable value of medical services, even if the medical provider accepted a partial payment in satisfaction and forgave some or all of the remaining balance.  Picard points to the collateral source rule, which prohibits deducting from the plaintiff's damages amounts paid by third parties in satisfaction of a medical bill.

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Whether the medical bills are probative and whether they may cause Ciulla unfair prejudice or mislead the jury depends on what damages Picard may recover considering his claims in this case.

Picard's claims in this case arise under 42 U.S.C. § 1983.  Therefore, New Hampshire law on torts – to the extent it is not inconsistent with federal law –

applies to the determination of what damages are recoverable by the plaintiff.  See 42 U.S.C. § 1988; Santiago-Negron v. Castro-Davila, 865 F.2d 431, 440 (1st Cir. 1989) ("There can be no doubt that § 1983 actions create tort liability with damages determined under the common law of torts."); Begin v. Drouin, No. 16-cv-92-JCN, 2019 WL 2193978, at *1 (D. Me. May 21, 2019).

In New Hampshire, a plaintiff in a tort action is entitled to recover as compensatory damages the reasonable value of past and future medical services caused by the defendant's wrongful acts.  See Williamson v. Odyssey House, Inc., No. Civ. 99-561-JD, 2000 WL 1745101, at *1 (D.N.H. Nov. 3, 2000) ("New Hampshire juries are instructed that in determining the amount of damages to award they may consider 'the reasonable value of past and future medical care' . . . ."); accord Johnston v. Lynch, 133 N.H. 79, 92-93 (1990) ("The court then told the jury they could consider the reasonable value of past and future medical care . . . . [T]he court properly instructed the jury about . . . damages . . . .").  Whether the plaintiff in fact paid for the medical services rendered – or ever incurred any legal liability for the medical services rendered – is not an aspect of compensatory damages as they relate to medical services.  See Clough v. Schwartz, 94 N.H. 138, 141 (1946); Reed v. Nat'l Council of Boy Scouts of Am., Inc., 706 F. Supp. 2d 180, 192 (2010); Williamson, 2000 WL 1745101, at *1.  This rule follows in large part from the so-called collateral source rule, which states that "if a plaintiff is compensated in whole or in part for his damages by some source independent of the [tortfeasor] he is still permitted to make full recovery against him."  Moulton v.

3

Groveton Papers Co., 114 N.H. 505, 509 (1974); see also Restatement (Second) of

Torts § 920A (1979) ("Payments made to or benefits conferred on the injured party

from [sources other than the tortfeasor] are not credited against the tortfeasor's

liability, although they cover all or a part of the harm for which the tortfeasor is

liable.").

The risk of unfair prejudice or of misleading the jury about the issues does

not substantially outweigh the probative value of Picard's medical bills.  First, the

probative value of an authentic medical bill as to the value of the services provided

is self-evident unless some evidence suggests the bill was fraudulent or otherwise

false.  Ciulla's assertion that medical bills are "fictional numbers" which are being

paid by no one is without support.  Ciulla offers no evidence about how Picard's

medical providers calculated the medical bills.  Ciulla offers no evidence about the

medical providers' billing practices.[1]  Rather, Ciulla makes an unsupported claim

that medical bills in general are arbitrarily determined by medical providers.

Ciulla's claim that Picard's bills are "fictional" is bootstrapped by the medical

providers' after-the-fact forgiveness of the bills' balances once the government made

a partial payment.  But the difference between the amount paid by the government

and the amount billed does not deprive the bills of their relevance as to the

reasonable value of medical services provided.  Nor does it demonstrate they were

"fictional numbers" as to the "reasonable value of medical services."  Accord Hinton

---

[1] Ciulla is of course free to introduce during trial evidence about how the bills
were calculated in order to undermine their presumptive value as evidence of the
reasonable value of the medical services received by Picard.

v. Outboard Marine Corp., 2012 WL 215183, at *2 (D. Me. Jan. 24, 2012) (Woodcock,

J.) ("[A]s far as MaineCare (the state version of Medicaid) is concerned, the

reimbursement rates are not necessarily based on the reasonable value of medical

services, but on 'what the public purse can barely afford.'").  As Ciulla observes,

medical providers are required by law to forgive the remaining balance of a bill once

Medicare has made a partial payment.  See 42 U.S.C. § 1395cc(a)(1)(A)(i).

Firms of all types write off bills for far less than the amount billed or even for

nothing.  But that does not mean these initial bills were "fictional" and bore no

relationship to the "reasonable value" of whatever service or good was provided.

Towns in New Hampshire, for example, write off bills they have issued for the cost

of their local ambulance services.  It is absurd to suggest that this practice means

that the reasonable value of those ambulance services was zero because the town

ultimately forgave the bill.  Someone still paid for the provision of these services.

That economic truth does not change merely because the provider was unable to

secure full compensation for its services in the context of the transaction.  Rather,

the provider's act of forgiveness (whether legally mandated or altruistic) only shifts

the person or entity who is responsible for paying the cost.  And, making an

assumption that the bill is fictional or arbitrary merely because it was forgiven – by

choice or by legal necessity – only obscures the actual cost of the alleged wrongful

actions.  Perhaps the unpaid amount will be later compensated by other insureds

with greater means to pay, or perhaps it will be later recouped, directly or

indirectly, with contributions from the public treasury in the form of grants or tax benefits.

While conceding that "the majority of superior courts (and this Court) have long" disagreed with his position, e.g., Aumand v. Dartmouth Hitchcock Medical Center, 611 F. Supp. 2d 78, 90 (D.N.H. 2009), Ciulla points to a handful of state superior court decisions which, he contends, support his position.  For example, Ciulla cites Gray v. Hannaford Bros. (N.H. Sup. Ct. Mar. 28, 2019), in which the court excluded evidence of medical bills.  In Gray, the court wrote: "In today's world of ubiquitous, federally mandated insurance coverage, and managed care, the Court cannot find any justification for applying a rule [the collateral-source rule] that has outlived its original justification."  Id.  The court further found that the plaintiff's evidence (identified as medical "statements" rather than "bills") reflected an "artificially inflated amount."  Doc. no. 60-1 at 3.  Beyond the mention of the fact that the medical provider had later accepted partial payments in satisfaction of those bills, the court did not describe the evidence on which the court relied to find that such amounts were "artificially inflated."

Ciulla also relies on Owens v. City of Manchester (N.H. Sup. Ct. May 16, 2023) to support the exclusion of the medical bills.  In Owens, however, the court concluded that "when the parties are in disagreement as to whether the face amount of the bills or the amount paid is a better gauge of value, the issue should

be put to a jury." Doc. no. 60-2 at 9.  Thus, <u>Owens</u>'s holding does not support

Ciulla's contention that the medical bills should be excluded.[2]

   The court in <u>Owens</u> also equated a partial payment in satisfaction of a

medical bill to an "arm's length transaction" in a property sale, which New

Hampshire typically recognizes as evidence of a good or service's value.  <u>Id.</u>  But one

payment by an insurer to a medical provider for one service rendered does not

reflect the whole value of any "arm's length transaction" between the insurer and

provider in the same way the purchase price of property usually reflects the entire

transaction between the buyer and seller, and, thus, the value of the property

transferred.  In other words, a contract between a medical provider and insurer is

not negotiated at "arm's length" on a person-by-person, service-by-service basis at

the time the service occurs, but rather on a provider-wide, service-wide basis.  There

could be a benefit to finding the value of an "arm's length transaction" in this

context – but the amount paid to satisfy an individual bill does not, on its own,

reflect it.  Further, the comparison to "arm's length" property sales has less force in

light of the complex regulatory backdrop governing medical providers, insurers, and

the government.

---

[2] To be sure, <u>Owens</u> contains some reasoning which appears helpful to Ciulla's argument.  Specifically, the court rejected the notion that there is an inherent connection between "possibly arbitrary" medical bills and the value of the services provided.  <u>Id.</u> at 8.  But, again, the court in <u>Owens</u> (as in <u>Gray</u>) did not include in its opinion the evidence on which it relied to conclude that the medical bills were "possibly arbitrary."  <u>Id.</u> at 7.

Permitting Picard to recover the value of medical services that he was not required to pay because of his circumstances will likely result in a windfall for him if he prevails, thus violating, in a sense, one underlying principle of compensatory damages which is to make the plaintiff whole, no more and no less.  See Moulton, 114 N.H. at 510 (observing that this principle is the "main argument against the application of the collateral source rule").  Importantly, however, if found liable, Ciulla's actions were still the cause of Picard's use of those medical services, whether the cost of using them was paid for by Picard, an insurer, the taxpayers, or a medical provider.  See id. at 509.  In this circumstance, the longstanding common law doctrine is that Picard should receive this windfall.  While Picard may not deserve it under the general principles of compensatory damages, it would not be unfair to Ciulla to require him to pay such damages since he is the one who (allegedly) caused them.  E.g., Aumand, 611 F. Supp. 2d at 90.

In other words, because of the medical provider's generosity, its legal obligations, or government benefits, there is a windfall in this case.  The collateral source doctrine dictates that such windfall should not fall to the tortfeasor.  E.g., Hinton, 2012 WL 215183, at *2 ("[T]he Court's best understanding of Maine law is that the injured party's medical damages are determined by the reasonable value of the service, that OMC should not benefit from the fortuity that a third party negotiated a favorable reimbursement rate, and that, if there is a windfall from reduced third party payments, the injured plaintiff, not the manufacturer of the defective product, should receive the difference."); Restatement (Second) of Torts

§ 920A, cmt. b. ("[I]t is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor. . . . If the benefit was a gift to the plaintiff from a third party or established for him by law, he should not be deprived of the advantage it confers.").[3]  At bottom, Picard's medical providers forgave the medical bills, which was a "collateral benefit" to which the law assigns Picard priority over Ciulla.

There is one final – and important – reason for this court to reject Ciulla's approach.  While some superior courts in New Hampshire have found reason to abandon the longstanding common law approach that medical bills are presumptive evidence of the reasonable value of medical services, it is not appropriate for this federal court to do so.  The court applies New Hampshire law through the statutory mandate of § 1988.  This court cannot overstep its role and abandon the established and longstanding majority approach – supported by the New Hampshire Supreme Court – in favor of the minority approach advocated by Ciulla and some state superior courts.  See Aumand, 611 F. Supp. 2d at 91.

---

[3] Moreover, the alternate approach advocated by Ciulla would obfuscate the full cost of his alleged wrongdoing behind the screen of insurance contracts and taxpayer-funded benefits.  While there is no indication that a third party (such as the medical provider or the state) could recover the value of the services from Picard if he prevails, the state legislature (or Congress, in the case of Medicare and Medicaid) or the New Hampshire Supreme Court could enable such a recovery in future cases if it chose to do so.  The solution to the problem identified by Ciulla and the state superior courts is not to eliminate the tortfeasor's liability for the full cost of medical treatment but to shift recovery to whomever in fact paid the cost.  As of now, the state's policy choice, consistent with the common law, is to permit the plaintiff to retain the recovery.  The court must follow that choice in this case.

**CONCLUSION**

Ciulla's motion to exclude evidence of Picard's medical bills (doc. no. 42) is

denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

September 13, 2023

cc:     Counsel of Record